**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 21 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES of AMERICA,

      Plaintiff - Appellee,

vs.

MARK ANTHONY FINNIGIN,

      Defendant - Appellant.

No. 96-3198

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-CR-10063)

---

Thomas C. McDowell, McDowell & Edingfield, Wichita, Kansas, for Defendant - Appellant.

Debra Barnett, Assistant United States Attorney (Jackie N. Williams, United States Attorney, and David M. Lind, Assistant United States Attorney, with her on the brief), Wichita, Kansas, for Plaintiff - Appellee.

---

Before SEYMOUR, Chief Judge, LOGAN and KELLY, Circuit Judges.

---

KELLY, Circuit Judge.

---

Pursuant to Fed. R. Crim. P. 11(a)(2), Defendant Mark A. Finnigin entered a conditional plea of guilty to one count of possession of four unregistered destructive devices, in violation of 26 U.S.C. §§ 5841 and 5861(d), and reserved the right to appeal the district court's denial of his pre-trial motion to suppress evidence. Mr. Finnigin also filed a motion to quash his arrest, which the district court denied. Because he did not expressly reserve that issue in his plea agreement, as required by Rule 11(a)(2), Mr. Finnigin has therefore waived that issue on appeal. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

Background

At 8:00 a.m. on May 18, 1995, Officer John Woydziak of the Rose Hill, Kansas, Police Department received a report of smoke coming from a small trailer located in a residential neighborhood near the Rose Hill police station. He and members of the Rose Hill volunteer fire department arrived minutes later and observed smoke coming from the trailer's windows. Shortly after their arrival, Mr. Finnigin, the occupant of the trailer, broke some windows and threw out a small television and a lamp.

During the next hour and a half, law enforcement and fire officials communicated with Mr. Finnigin through the broken trailer windows and passed fire extinguishers in to him. At some point during this time, Mr. Finnigin threw a smoldering mattress and some

bedding out the trailer door. Mr. Finnigin yelled obscenities at the officials, claimed to have put out the fire, and refused to allow anyone into the trailer.

Around 9:40 a.m., Mr. Finnigin emerged from the trailer, naked except for a pair of black tennis shoes. He began walking toward the officers, who walked toward him, but when he got close to them he suddenly turned and ran away. The officers caught up with him, and, after a struggle, were able to subdue him. They covered him with a blanket and arrested him for disorderly conduct. He was placed in Officer Woydziak's patrol car for transportation to the Butler County jail.

Shortly after Officer Woydziak and Mr. Finnigin left for the jail, volunteer firefighters entered the trailer, according to their routine procedure, to make sure the fire was completely extinguished, to remove items that were still smoldering, and to determine the cause and origin of the fire. Deputy Fire Chief Phil Wright observed evidence of a burn on the floor in the bedroom which appeared to be from a secondary fire, possibly the result of arson. He moved several smoldering articles near the burn and found a tape-covered device with wires running out of it. Law enforcement officials on the scene had told him that the trailer had been booby-trapped before, and he feared that the device he found might be some sort of trap or explosive. ATF agents arrived shortly thereafter and entered the trailer to verify that the device found was indeed an explosive device. Similar devices were discovered, but not removed. The Kansas Fire Marshall arrived and walked through the trailer, observing the irregular burn patterns as well as the

devices found by Deputy Chief Wright and the ATF agents. At around 12:30 p.m., the Wichita Police Department bomb squad arrived.

ATF Agent Dennis Laughrey and Fire Marshall David Higday then went to the Butler County jail to interview Mr. Finnigin to determine whether there were any additional explosive devices or traps on the property. Mr. Finnigin gave a detailed statement concerning the devices and drew a diagram of the trailer. Because Mr. Finnigin was intoxicated at the time, however, the district court suppressed all the statements he made during this interview as involuntary.

Based upon the observations of the firefighters and ATF agents, his own observations, and the statements made by Mr. Finnigin during the jail interview, Fire Marshall Higday obtained a search warrant. The explosive devices which form the basis of the indictment were seized during the execution of this warrant. The warrant, with attached affidavit, was received in evidence at the suppression hearing.

## Discussion

Mr. Finnigin challenges the admission of the explosive devices found in his trailer on two grounds. First, he argues that they were initially discovered during an illegal search of his trailer. Second, he argues that they were seized pursuant to an illegal search warrant. When reviewing the district court's ruling on a motion to suppress, we accept the court's factual findings unless clearly erroneous, and view the evidence in the light

most favorable to the district court's findings.  United States v. Elliott, 107 F.3d 810, 813 (10th Cir. 1997).  "[A]t a hearing on a motion to suppress, the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge."  United States v. Fernandez, 18 F.3d 874, 876 (10th Cir. 1994).  Nevertheless, the ultimate determination of the reasonableness of a search under the Fourth Amendment is a question of law which we review de novo.  Elliott, 107 F.3d at 813.

## I.    Reasonableness of the Search

Mr. Finnigin argues that the district court erred in admitting the explosive devices as evidence because they were the fruit of an unlawful search, and as such, should have been excluded.  According to Mr. Finnigin, because he never consented to a search of his home, and because he himself had extinguished the fire, any exigency which may have existed had abated by the time the firefighters and law enforcement officials entered his trailer.  Citing Michigan v. Tyler, 436 U.S. 499 (1978), he argues that the entries were "detached from the initial exigency," id. at 511, and required a search warrant based on probable cause.  Mr. Finnigin overstates his own firefighting capabilities, and understates the rule in Tyler.

Contrary to Mr. Finnigin's assertions, the district court found that the fire was not out when the firefighters entered—a finding which our review of the record indicates was

not clearly erroneous.  At least some of the firefighters observed smoke still coming from the trailer, which was located in a residential area only sixty feet from its closest neighbor.  The evidence is undisputed that several smoldering pieces of furniture were removed from the premises and burst into flames on the front lawn.  The firefighters had an obligation to make sure the fire no longer presented a danger to the trailer and to the surrounding residences, and were not required to rely on Mr. Finnigin's obscenity-laced assertions that the fire was out.

More importantly, the Supreme Court in Tyler rejected the notion that the exigency justifying a warrantless entry to fight a fire ends with the dousing of the last flame.  "We think this view of the firefighting function is unrealistically narrow . . . .  Fire officials are charged not only with extinguishing fires, but with finding their causes.  Prompt determination of the fire's origin may be necessary to prevent its recurrence . . . ." Id. at 510.  For this reason, fire officials need no warrant to enter and remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished.  Id.

Thus, whether for the purpose of making sure the fire was out or investigating its cause, the entry by fire officials into Mr. Finnigin's trailer was reasonable, was carried out under exigent circumstances, and did not require a warrant.  Once the explosive devices were discovered, it became necessary to further investigate in order to ensure the safety of the firefighters and of the neighboring residents.  The exigency, therefore, had not abated at the time of the subsequent entries by ATF agents and the state fire marshall.  Nor had it

abated when the bomb squad was called in from Wichita. Contrary to Mr. Finnigin's argument that there were two distinct searches, the entry by the fire marshall and ATF agents was an actual continuation of the initial search by fire officials, and did not require a warrant. Id. at 511.

## II.    Validity of the Search Warrant

The explosive devices which served as the basis for the charges against Mr. Finnigin were ultimately seized pursuant to a warrant obtained by Fire Marshall Higday. Mr. Finnigin challenges this warrant on several grounds. First, he argues that the warrant was invalid because the probable cause to support it was based on illegally obtained evidence. Second, he contends that the warrant was overbroad and lacking in particularity in its description of the places to be searched and the things to be seized. Neither argument has merit.

### A.    Probable Cause

Whether probable cause exists is a determination based on common sense. United States v. Janus Indus., 48 F.3d 1548, 1552 (10th Cir.), cert. denied, 116 S. Ct. 87 (1995). We will give great deference to the magistrate's determination of probable cause, and will uphold that conclusion if the "totality of the information contained in the affidavit provided a substantial basis for finding there was a fair probability that evidence of

criminal activity would be found." Id. at 1553 (quoting United States v. Hager, 969 F.2d 883, 887 (10th Cir.), cert. denied, 506 U.S. 964 (1992)). Fire Marshall Higday's affidavit indicated that probable cause was based on two sources: the statements made by Mr. Finnigin while he was in police custody, and the explosive devices he and other officials observed in Mr. Finnigin's trailer. Mr. Finnigin argues that both sources of information were illegally obtained, and thus cannot serve as a basis for probable cause for the warrant. He is correct that his statements may not be used as a basis for probable cause because the district court suppressed them as involuntary—a ruling which the government has not appealed. When making its ruling on the statements, however, the district court specifically concluded that the warrant was issued upon probable cause as supported by facts and observations "untainted" by Mr. Finnigin's suppressed statements. See United States v. Anderson, 981 F.2d 1560, 1568 (10th Cir. 1992). We agree. Excising any information derived from Mr. Finnigin's statements, Fire Marshall Higday's affidavit still contains more than enough information gleaned from his own observations and those of the fire and law enforcement officials on the scene to "ensure that the magistrate issuing the warrant had a 'substantial basis' for concluding that probable cause existed." Id. (quotations omitted).

Mr. Finnigin contends that, absent his involuntary statements, the warrant must fail because the explosive devices found in his trailer were illegally discovered and therefore could not be used to provide probable cause to search for more of the same. The Supreme

Court held in Tyler that "if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional." 436 U.S. at 510. Mr. Finnigin argues that even if the firefighters were lawfully in his residence, the explosive devices were not discovered in plain view because Deputy Chief Wright had to move articles in the bedroom to find them. We apply the plain view doctrine, however, in light of the special circumstances that frequently accompany fire damage. Michigan v. Clifford, 464 U.S. 287, 295 n.6 (1984). "In searching solely to ascertain the cause, firemen customarily must remove rubble or search other areas where the cause of fires is likely to be found. An object that comes into view during such a search may be preserved without a warrant." Id. In this case, when Deputy Chief Wright moved and lifted things while searching for the cause of the secondary fire he had discovered in the bedroom, the explosive devices came into plain view. Once in plain view, the explosive devices provided probable cause to believe other explosive devices might be present on the premises.

### B.    Overbreadth and Particularity

Mr. Finnigin argues that the warrant itself was overbroad and lacked particularity in describing the place to be searched and the things to be seized. The breadth or particularity of a warrant is a legal question which we review de novo. Janus Indus., 48 F.3d at 1554. In addition to a detailed description of his trailer located at its correct

address, the warrant authorized the search of "[a]ny and all outbuildings and storage sheds associated with said residence; together with any and all vehicles driven by or registered to the owners or occupants of said trailer home." Mr. Finnigin argues that there was no probable cause to search these buildings. We disagree. We have held that outbuildings and vehicles within the curtilage of a residence are considered part of that residence for purposes of a search warrant, and have upheld searches of those buildings and vehicles even when not named in the warrant. See United States v. Earls, 42 F.3d 1321, 1327 (10th Cir. 1994) (upholding search of detached garage, shed and office even though not named in warrant), cert. denied, 115 S. Ct. 1800 (1995); United States v. Sturmoski, 971 F.2d 452, 458 (10th Cir. 1992) (upholding search of vehicles found within curtilage of residence even though not specifically named in warrant). Under these cases, Mr. Finnigin's outbuildings and vehicles could have been searched even if not named in the warrant, so it was certainly not improper to name them in the warrant or to search them pursuant to the warrant. Because probable cause supported the search of Mr. Finnigin's residence, as a matter of law it also supported the search of the outbuildings and vehicles within the curtilage of that residence.

Mr. Finnigin also argues that the warrant lacked particularity in its description of the things to be seized. The Fourth Amendment's particularity requirement "ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." Janus Indus., 48 F.3d at 1554

(quoting Voss v. Bergsgaard, 774 F.2d 402, 404 (10th Cir. 1985)).  We apply a practical test to this requirement, however, and have held that a warrant's description of things to be seized is sufficiently particular if it allows the searcher to "reasonably ascertain and identify the things authorized to be seized."  United States v. Robertson, 21 F.3d 1030, 1033 (10th Cir. 1994) (quoting United States v. Wolfenbarger, 696 F.2d 750, 752 (10th Cir. 1982)), cert. denied, 513 U.S. 891 (1994).   The warrant in this case described the items to be seized as:  "1) Any and all unlawful explosives, components or materials thereof; 2) Any equipment capable of use for the manufacture or assembly of said unlawful explosive devices."  Contrary to Mr. Finnigin's assertions, this description did not authorize a fishing expedition in his trailer.  Under the facts of this case, we are satisfied that the warrant was sufficiently particular to properly "allow the executing officers to distinguish between items that may and may not be seized."  United States v. Leary, 846 F.2d 592, 602 (10th Cir. 1988).

AFFIRMED.