FILED
United States Court of Appeals
Tenth Circuit

December 23, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHARLEY EDWIN GENTRY,

Defendant - Appellant.

No. 09-6201

(W.D. Oklahoma)

(D.C. No. 5:08-CR-00320-R-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **HOLLOWAY**, and **O'BRIEN,** Circuit Judges.

---

## I.      Introduction

After appellant Charley Edwin Gentry was charged in a three-count indictment with drug and firearms crimes, he filed a motion to suppress evidence seized during a warrant-based search of his residence. He argued the affidavit supporting the search warrant contained material misrepresentations and omissions, without which no warrant would have been issued. Gentry also requested a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 171-72

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(1978). After the district court denied the motion, Gentry pleaded guilty to all three counts. In the written plea agreement, he reserved his right to appeal the denial of his motion to suppress. Gentry now challenges the district court's refusal to suppress the evidence obtained during the search and its refusal to hold a *Franks* hearing. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the district court's decision.

## II. Background

Beginning on June 23, 2008, officers from the Stephens County Sheriff's Department and the Duncan City Police Department began surveilling Gentry's Oklahoma residence in connection with an investigation into methamphetamine trafficking. On June 26, officers obtained a search warrant authorizing a search of the residence. That warrant was supported by an affidavit from Todd Nunley, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. The affidavit recounted that Gentry was a known methamphetamine user with prior felony convictions for possession of methamphetamine and conspiracy to distribute methamphetamine. The affidavit also contained facts gathered during the surveillance, including the following.

Over the course of three consecutive days and eighteen hours of surveillance, officers observed fifty-four vehicles arrive at Gentry's residence and leave within a short period of time. Most of the visitors were known to investigators to be methamphetamine users and three were known to manufacture

methamphetamine. On June 25, officers observed an individual named Craig Briscoe arrive at Gentry's residence, enter, and depart a short time later. Officers stopped Briscoe's vehicle after they observed he was not wearing a seat belt. Before pulling over, Briscoe threw items from his vehicle. The items were retrieved and identified as a smoking pipe and a baggie containing a substance which field-tested positive for methamphetamine. Briscoe confirmed that he had been to Gentry's residence. He also told the officers he would test positive for the use of methamphetamine if tested. Briscoe was subsequently charged with possession of methamphetamine.

Later the same afternoon, officers stopped a second vehicle after the driver, later identified as Francis Newkirk, was observed entering Gentry's home and exiting five minutes later. Officers initiated the stop when Newkirk failed to signal a left turn. She was detained and eventually arrested for operating a motor vehicle with a suspended driver's license. When officers searched Newkirk's vehicle, they discovered methamphetamine, marijuana, and drug paraphernalia in her purse. An additional amount of methamphetamine was found in her clothing when she was processed at the Stephens County Jail.

Believing that evidence might be destroyed or removed from Gentry's residence, officers decided to conduct a "knock and talk." Deputy Rodney Richards stated he forced his way into the home when he heard what sounded like individuals running through the residence. Richards also stated he was

overwhelmed by a chemical odor he associated with the manufacture of methamphetamine once Gentry's front door was opened. Officers searched the home but found no one inside. When they exited the rear door, they found Gentry outside. Gentry told the officers an individual named John was inside. When officers failed to find John in the home, Gentry indicated he had exited the residence and run to the south. Gentry's statement was corroborated by a patrol officer who observed a man running southward from Gentry's home.

On June 26, officers conducted a search of Gentry's home pursuant to the warrant obtained earlier in the day from a United States magistrate judge. Among other things, they seized a plastic bag containing 1.9 grams of methamphetamine; a bag containing 249 grams of red phosphorus, which contained a detectable amount of methamphetamine; and assorted ammunition. Gentry was charged in a three-count indictment with possession with intent to manufacture, distribute, and dispense fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); knowingly and intentionally maintaining his residence for the purpose of distributing and using methamphetamine, in violation of 21 U.S.C. § 856(a)(1); and being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).

After Gentry was indicted, he moved to suppress the evidence found during the June 26th search of his residence. He argued the evidence obtained during the warrantless search of his home on June 25 could not serve as a basis for probable

cause for the search warrant obtained and executed on June 26 because the June 25th search was conducted in violation of the Fourth Amendment. He also argued Agent Nunley intentionally omitted information from his affidavit which, if disclosed, would have caused the magistrate to refuse to issue the warrant. The district court assumed, *arguendo*, that the June 25th warrantless entry into Gentry's home was not justified by exigent circumstances and excised from the affidavit the evidence discovered during that search. *See United States v. Finnigin*, 113 F.3d 1182, 1186 (10th Cir. 1997) (evaluating the sufficiency of an affidavit after first excising suppressed statements). Specifically, the court conducted its probable cause analysis without considering Deputy Richards's statement that he was "overwhelmed" by a smell he associated with the manufacture of methamphetamine when he opened the front door to Gentry's residence. The court concluded that even without this statement, Agent Nunley's affidavit still provided the magistrate with a substantial basis for concluding probable cause existed to support the warrant. The court further concluded that none of the information Gentry alleged was intentionally omitted from Agent Nunley's affidavit was material to the magistrate's probable cause determination. Accordingly, the district court denied Gentry's motion to suppress and concluded a *Franks* hearing was not necessary.

## III.  Discussion

### A.  *Probable Cause Determination*

The ultimate legal determination of whether a search was reasonable under the Fourth Amendment is reviewed *de novo*.  *See United States v. Grimmett,* 439 F.3d 1263, 1268 (10th Cir. 2006).  When conducting our review, we accept the factual findings made by the district court unless they are clearly erroneous.  *Id.* Here, Gentry argues Agent Nunley's affidavit was insufficient to support the magistrate judge's probable cause determination.  When a search is done pursuant to a warrant, we are tasked with ensuring the issuing judge "had a substantial basis for concluding that the affidavit in support of the warrant established probable cause."  *Id.* (quotations omitted).

Gentry asserts that any evidence discovered during the warrantless search of his residence on June 25 cannot be considered in the probable cause determination because the search violated the Fourth Amendment and, thus, the evidence was obtained illegally.  *See Finnigin*, 113 F.3d at 1185 (excising suppressed statements from a supporting affidavit).  The district court declined to decide whether the June 25th warrantless entry into Gentry's residence violated the Fourth Amendment.  Instead, it assumed for purposes of the motion that the entry was unlawful.  It then followed the approach taken by this court in *Finnigin* and evaluated the magistrate's probable cause determination without considering the challenged evidence.  *See id.* at 1185-86.  Specifically, the district court

refused to credit Deputy Richards's statement that he was overwhelmed by a smell he associated with the manufacture of methamphetamine when he opened the door to Gentry's residence.

Gentry does not disagree with the approach taken by the district court. He argues, instead, that the district court failed to excise *all* improperly obtained information from Agent Nunley's supporting affidavit. Gentry alleges the court should not have considered Deputy Richards's statement that he heard individuals running through the residence after he knocked and announced his presence at Gentry's front door. The record, however, indicates Richards heard the noise while standing in front of Gentry's closed exterior door. Gentry does not explain why he had an expectation of privacy with respect to the area near his front door. *Cf. United States v. Santana*, 427 U.S. 38, 42 (1976) (holding defendant standing in the doorway of her home was in an area where she had no expectation of privacy for Fourth Amendment purposes). We will assume for purposes of our review, however, that the district court should not have considered Richards's statement when it made its probable cause determination. Accordingly, we will excise from Agent Nunley's affidavit all information obtained during the June 25 warrantless search, including Deputy Richards's statement that he heard the sound of individuals running through Gentry's residence and his statement that upon opening Gentry's front door he was overwhelmed by a chemical smell he associated with the manufacture of methamphetamine.

-7-

Even without Deputy Richards's statements, Agent Nunley's affidavit alleged facts sufficient to establish probable cause. The affidavit contains uncontested statements that Gentry was a known methamphetamine user who had previously been convicted of possessing and distributing methamphetamine. This information on Gentry's criminal history contributed to probable cause and corroborated tips by confidential informants, included in Nunley's affidavit, that Gentry was involved in the manufacture and/or distribution of methamphetamine. *See United States v. Artez*, 389 F.3d 1106, 1114-15 (10th Cir. 2004). These tips were further corroborated by the three days of police surveillance which "show[ed] an unusually high volume of visitors briefly entering and leaving [Gentry's] residence, consistent with drug trafficking." *United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992); *see also Artez*, 389 F.3d at 1114 (concluding such activity can be used to "corroborate information from a confidential informant that the residence is being used to distribute narcotics"). Gentry does not dispute the previous convictions or the number of short-term visitors to his home.

Agent Nunley's affidavit also stated that the short-term visitors to Gentry's home were known users of methamphetamine. Gentry challenges this statement on the grounds that the affidavit does not identify the source of this information and, thus, it is unreliable. We have previously held that "the complete failure of an affidavit to discuss the reliability of an informant does not automatically

preclude a finding of probable cause." *United States v. Avery*, 295 F.3d 1158, 1167 (10th Cir. 2002). "When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000); *see also Corral*, 970 F.2d at 727 ("All that is required to support probable cause is that enough information—beyond the mere conclusions of the affiant—be presented to the magistrate to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process." (quotation omitted)). Here, the statement was corroborated when officers found methamphetamine and drug paraphernalia in the possession of both Briscoe and Newkirk after each had briefly visited Gentry's home. This corroborating information was included in Nunley's affidavit and presented to the magistrate judge. Although Gentry argues the investigating officers had no reason to believe that Briscoe and Newkirk obtained the drugs while at his residence, this argument misses the mark. Even if Briscoe and Newkirk obtained the drugs elsewhere, their arrests still corroborated the statements in Nunley's affidavit that visitors to Gentry's home were known methamphetamine users. Further, because Gentry has a prior felony conviction for conspiracy to distribute methamphetamine and officers observed Briscoe and Newkirk make short-term visits to Gentry's home, it was not unreasonable for the

magistrate judge to infer that Briscoe and Newkirk obtained the drugs from Gentry.

Even with both of Deputy Richards's statements excised, we conclude Agent Nunley's affidavit provided the magistrate judge with a substantial basis for determining probable cause existed because the remaining information "in the affidavit would warrant a [person] of reasonable caution to believe that evidence of a crime [would] be found at" Gentry's residence. *Artez*, 389 F.3d at 1113 (quotation omitted). Accordingly, the district court properly denied Gentry's suppression motion.

### B. Entitlement to a Franks Hearing

Gentry also argues the district court erred by refusing to conduct a *Franks* hearing. If an affidavit filed in support of a search warrant contains intentional or recklessly asserted material falsehoods, it cannot provide probable cause to support the warrant. *Franks*, 438 U.S. at 164-65. Gentry argues, as he did before the district court, that Agent Nunley's affidavit omitted material information. A district court is not required to hold a hearing on the sufficiency of an affidavit unless the defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant" and "the allegedly false statement [was] necessary to the finding of probable cause." *Id*. at 155-56. The district court refused Gentry's request for a *Franks* hearing, concluding Gentry failed to make a substantial

-10-

showing that Agent Nunley's affidavit contained material omissions. Gentry asserts the district court's ruling is reviewed for abuse of discretion; the Government notes this court has not adopted a standard of review but other Circuit Courts of Appeals apply either a clear error standard or a de novo standard. *See United States v. Archuleta*, 222 F. App'x 710, 715 (10th Cir. 2007) (collecting cases). Because the issue has not been fully briefed by the parties, we decline to decide which standard of review to apply because the district court's ruling survives even a de novo review.

Gentry identifies three facts not included in Agent Nunley's affidavit. First, on June 25, investigating officers stopped Harold Thompson as he left Gentry's house but a subsequent search of Thompson's vehicle did not uncover any drugs. Officers also stopped Cindy Brooks on June 25 and, again, did not find any drugs. Finally, the large number of visitors to Gentry's home on one day can be explained by the funeral of Gentry's friend, Kelly Weldon.

Even assuming these assertions are true, we agree with the district court that Gentry wholly failed to make a substantial preliminary showing that any of this information was material to the probable cause determination. Although officers did not find drugs when Thompson and Brooks were stopped, this does not undermine the fact that they *did* find drugs when Briscoe and Newkirk were stopped. The Weldon funeral does not explain the large number of visitors to Gentry's home on the remaining two days of surveillance and, additionally, does

not negate the officers' observations that each visitor stayed for a very short period of time. Accordingly, Gentry failed to make a preliminary showing that the information he alleged was omitted from Nunley's affidavit was material to the magistrate judge's probable cause determination.

Gentry also argues he was entitled to a *Franks* hearing so he could explore the veracity of Deputy Richards. This court, however, has concluded that Agent Nunley's affidavit is sufficient even when the two contested statements of Deputy Richards are not considered and Gentry has not specifically identified any other material omissions or misrepresentations in the affidavit attributable to Richards. *See Franks*, 438 U.S. at 171 ("[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire for cross-examination. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations . . . should point out specifically the portion of the warrant affidavit that is claimed to be false . . . ."). Accordingly, this argument also fails.

## IV.    Conclusion

The denials of Gentry's motion to suppress and his request for a *Franks* hearing are **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

-12-