**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 22 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

vs.

CHARLEY HARGUS,

    Defendant-Appellant.

No. 97-6014

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CR 95-102-T)

---

Chris Eulberg, Eulberg & Brink, Oklahoma City, Oklahoma, for Defendant-Appellant.

Ross N. Lillard, III, Assistant United States Attorney (Patrick M. Ryan, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before BALDOCK, KELLY, and BRISCOE, Circuit Judges.

---

KELLY, Circuit Judge.

---

    Defendant-Appellant Charley Hargus appeals from his jury conviction on twenty-three counts of conspiracy, 18 U.S.C. § 371, mail fraud, 18 U.S.C. § 1341, and money laundering, 18 U.S.C. § 1956(a)(1)(B)(I). The district court sentenced Mr. Hargus to

seventy-eight months in prison, a term of supervised release, and ordered him to pay restitution. On appeal Mr. Hargus argues that the trial court erred (1) in denying his motion to suppress evidence obtained from the search of his home; (2) in allowing testimony of a sting operation after the government lost material and exculpatory evidence; and (3) in computing his base sentence and assessing enhancements. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), and we affirm.

Background

On the evening of August 26, 1991, an investigator from the Oklahoma District Attorney's office arrived at Mr. Hargus's oil reclaiming yard. Larry Johnson, a truck driver arrested earlier that day for embezzling oil, also arrived at the yard with a tanker truck containing stolen oil. Cooperating with local authorities in a sting, Mr. Johnson had called Mr. Hargus at home earlier in the day to arrange the sale of the stolen oil. The investigator was introduced to Mr. Hargus as the owner of a fictitious company selling the oil. The conversation between the three men was recorded via a body transmitter worn by Mr. Johnson. The investigator gave Mr. Hargus a false load ticket. A load ticket shows ownership of oil, and under Oklahoma law must accompany every truck load of oil in transportation. Mr. Hargus gave the investigator an unsigned check.

Four days later the investigator obtained a warrant to search Mr. Hargus's home and business. The searches lasted approximately five hours and resulted in the seizure of

2

many records, including two file cabinets and items not specified in the warrant.

Approximately four years later Mr. Hargus was arrested after a grand jury indicted him on the present charges of conspiracy, mail fraud, and money laundering. The evidence at trial indicated that Mr. Hargus organized a scheme to steal oil from a tank battery located at the Borque oil lease, belonging to Star Production, Inc. A pumper at the lease, Ronney Dice, diverted the oil and stored it for pickup in the Borque tank. Mr. Johnson picked up the oil, and, with load tickets stating it was "tank bottoms" from the Karla 2, a dry well Mr. Hargus owned, trucked the good oil either to the JADCO or SUN oil companies, or to Hargus Reclaimers, where it would be picked up later by JADCO or SUN. JADCO and SUN bought the oil at market price and were unaware it was stolen. Mr. Hargus had falsely reported to the Oklahoma Corporation Commission that the Karla 2 was a producing well.

The mail fraud counts were based on the checks Mr. Hargus received through the mails from SUN and JADCO in payment for the oil. The money laundering counts were predicated on Hargus's depositing those checks in his bank, and in some cases writing checks to co-conspirator Ronney Dice. The conspiracy count involved Mr. Hargus, Mr. Dice, and Mr. Johnson.

The sentencing court calculated the loss at $582,918.64, enhancing Mr. Hargus's sentence accordingly under USSG § 2F1.1. The district court also enhanced Mr. Hargus's sentence for his aggravating role as a leader or organizer, USSG § 3B1.1(a), for

more than minimal planning, USSG § 2F1.1(b)(2)(A), and for obstruction of justice, USSG § 3C1.1.

Discussion

I.  The Search

Mr. Hargus contends that the search of his home violated the Fourth Amendment on four grounds.  First, he argues that the affidavit in support of the search warrant contained false and misleading statements.  Second, he argues no probable cause existed to search his home for the items listed in the warrant.  Third, he challenges the particularity of the warrant.  Fourth, he argues that the officers executed the search in flagrant violation of the terms of the warrant.  When reviewing a district court's denial of a motion to suppress, we accept its factual findings unless clearly erroneous and view the evidence in the light most favorable to the government.  See United States v. Villa-Chaparro, 115 F.3d 797, 800-01 (10th Cir. 1997), petition for cert. filed, (U.S. Sept. 10, 1997) (No. 97-5973).  The credibility of witnesses at the suppression hearing and the weight to be given to the evidence, along with all reasonable inferences from it, are matters for the trial court.  See id. at 801.  The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law which we review de novo, considering the totality of the circumstances.  See id.

4

## A. The Warrant Application

Mr. Hargus argues that the affidavit on which the search warrant was issued contained false and misleading statements and omissions. He contends the affiant failed to tell the issuing magistrate that he had no reason to believe the conspiracy involved anyone other than Hargus, Johnson, and Dice; that he had no reason to believe Mr. Hargus was involved in any illegal activity dealing with gas, salt water and other fluid transfers, or that gas gauge books were located either at Mr. Hargus's business or home. In addition Mr. Hargus argues that the affiant had no reason to believe that certain specified items, such as certificates of deposit, were evidence of criminal activity; and he challenges the veracity of various details in the affidavit. We need not reach these issues because the affidavit contains adequate facts to establish probable cause without considering the allegedly false statements and material omissions. The affidavit recited the sting operation in which Mr. Hargus bought stolen oil at his reclaiming yard; it described the conspiracy between Hargus, Johnson, and Dice; and it described oil transfer reports and daily time sheets provided to the affiant by Mr. Johnson and his employer, indicating that the trafficking in stolen oil had been going on for at least three months. In our view these facts alone established probable cause for the warrant. See Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (even if a court finds that some information is false, suppression is required only if the false or misleading information is necessary to a finding of probable cause); United States v. Myers, 106 F.3d 936, 940 (10th Cir.)

5

(declining to address alleged falsehoods because even without them the warrant established probable cause), cert. denied, 117 S. Ct. 2446 (1997).

Mr. Hargus also contends that the affidavit did not provide probable cause to believe the specified items could be found in his house, and consequently the warrant to search his house violated the Fourth Amendment. A nexus between the objects to be seized and the place to be searched for them is established when the circumstances set out in the affidavit would warrant a person of reasonable caution to believe that the articles sought would be found at the place to be searched. See United States v. $149, 442.43 in U.S. Currency, 965 F.2d 868, 874 (10th. Cir. 1992); United States v. Rahn, 511 F.2d 290, 293 (10th Cir. 1975). There need not be direct evidence or personal knowledge that the items sought are located at the place to be searched, and we have recognized that courts often rely on the opinion of police officers as to where contraband may be kept. See $149, 442.43 in U.S. Currency, 965 F.2d at 874. Here the investigator's affidavit indicated that Mr. Hargus was reached at his home when the stolen oil buy was arranged. This fact, together with the nature of the small business Mr. Hargus operated and the ongoing conspiracy described in the affidavit, made it reasonable for the issuing judge to conclude that the records described in the affidavit would be found at Mr. Hargus's house.

B.  The Warrant

Mr. Hargus next argues that the search warrant did not describe with sufficient particularity the things to be seized, in violation of the Fourth Amendment.  We review de novo whether the warrant was overbroad or insufficiently particular under the Fourth Amendment.  See Davis v. Gracey, 111 F.3d 1472, 1478 (10th Cir. 1997).  "[A] warrant's description of things to be seized is sufficiently particular if it allows the searcher to reasonably ascertain and identify the things authorized to be seized."  United States v. Finnigin, 113 F.3d 1182, 1187 (10th Cir. 1997) (omitting quotations and citations).  Further, the warrant must leave nothing to the officer's discretion as to what is to be seized, so that the officer is prevented from generally rummaging through a person's belongings.  See Lawmaster v. Ward, No. 96-5028, 1997 WL 577708, at *5 (10th Cir. Sept. 18, 1997).

The warrant described the following particular things to be seized:

1.  oil and gas gauge books;
2.  telephone records, bills, and invoices;
3.  business records, receipts, invoices, accounts payable, and other records regarding oil and gas, salt water and other fluid transfers of the business known as Hargus Reclaimers;
4.  check books and check stubs;
5.  checking account records of all accounts of Charley Hargus and Hargus Reclaimers;
6.  oil transfer reports;
7.  certificates of deposit;
8.  bank deposit statements of savings and other accounts;
9.  income tax records;

10.  any and all records relating to the business of Hargus Reclaimers and records

7

> pertaining to the purchase and sale of oil, oil by-products, salt water and other fluids by Charles Hargus.
>
> Aplt. Supp. App. at 7.

Although Mr. Hargus contends this constitutes a general warrant we are satisfied that it is sufficiently limited and specific, in view of the nature of this extended conspiracy and other crimes for which he was being investigated, to "allow the executing officers to distinguish between items that may and may not be seized." Finnigin, 113 F.3d at 1187 (quoting United States v. Leary, 846 F.2d 592, 602 (10th Cir. 1988)). "Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." Davis, 111 F.3d at 1478 (internal quotations omitted).

## C. Execution of the Warrant

Mr. Hargus argues that the officers conducting the search of his home grossly exceeded the scope of the warrant, rummaged in an exploratory way through his belongings, and took things not specified in the warrant. He argues this requires suppression of all the results of the search.

The officers' conduct in executing a search warrant is governed by the Fourth Amendment's mandate of reasonableness from the moment they step into the house until the moment they leave. See Lawmaster, 1997 WL 577708, at *6. If evidence is illegally seized, the general rule is that "only the improperly seized evidence, not all of the

evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant." United States v. $149, 442.43 in U.S. Currency, 965 F.2d 868, 875 (10th Cir. 1992) (internal quotations omitted). Thus a search is not invalidated merely because some things are seized that are not stated in the warrant. This is particularly true when the non-specified items are not admitted into evidence against the defendant. See United States v. Henson, 848 F.2d 1374, 1383 (6th Cir. 1988). However "[w]hen officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and an otherwise valid warrant is transformed into a general warrant," which may require suppression of all evidence seized pursuant to it. United States v. Foster, 100 F.3d 846, 849-50 (10th Cir. 1996) (quoting United States v. Medlin, 842 F.2d 1194, 1199 (10th Cir. 1988) (Medlin II)).

The officers began their search at Hargus Reclaimers, and after approximately one hour they drove to Mr. Hargus's home. Within fifteen minutes the search had centered in the den, where a desk, two file cabinets, and a safe were located. According to the testimony, only minimal records were seized from other parts of the house; the locus of the Hargus Oil records was in the den, where the remainder of the search took place. After confirming that oil records were present in every drawer of the file cabinets (sometimes intermingled with other records), the officers decided that on-site sorting would be impractical and unduly time-consuming. See Aplt. Supp. App. at 24-25. The officers seized both file cabinets with all their contents, and informed Mr. Hargus's son,

9

Curtis, that he could obtain any unrelated papers from the district attorney upon request.

Among the items seized beyond the scope of the warrant were unopened mail, office supplies, an answering machine, camera, birthday cards, tape measure, right-of-way papers, horse and cattle papers, and life insurance policies. See Aplt. Brief at 14.

Although we are given pause by the wholesale seizure of file cabinets and miscellaneous papers and property not specified in the search warrant, the officers' conduct did not grossly exceed the scope of the warrant. Their conduct was motivated by the impracticability of on-site sorting and the time constraints of executing a daytime search warrant. The officers were authorized to seize ten broad categories of records, and those records were present in every drawer of both file cabinets. No item not specified in the warrant was admitted against Mr. Hargus at trial. Under these circumstances the officers did not grossly exceed the warrant in concluding they did not need to examine at the site every piece of paper in both cabinets. See Henson, 848 F.2d at 1383-84; $149, 442.43 in U.S. Currency, 965 F.2d at 875-76; United States v. Shilling, 826 F.2d 1365, 1369-70 (4th Cir. 1987), overruled on other grounds by United States v. Starkes, 32 F.3d 100, 101 (4th Cir. 1994); United States v. Schandl, 947 F.2d 462, 465-66 (11th Cir. 1991); United States v. Tamura, 694 F.2d 591, 597 (9th Cir. 1982); Marvin v. United States, 732 F.2d 669, 674 (8th Cir. 1984).


II. Admission of Sting Evidence


10

The government appears to have lost or destroyed both the load ticket and the check exchanged between the investigator and Mr. Hargus in the course of the sting operation. Mr. Hargus claims that both items were exculpatory. As a sanction, he argues that the trial court should have excluded evidence of the sting altogether. Because Mr. Hargus has not alleged bad faith on the part of the government he must prove that the lost evidence had "apparent" exculpatory value in order to invoke the sanction. <u>United States v. Bohl</u>, 25 F.3d 904, 910 (10th Cir. 1994) (citing <u>California v. Trombetta</u>, 467 U.S. 479 (1984)). The district court found that the load ticket and unsigned check were at best potentially useful. We review this finding of fact for clear error. <u>Id.</u> at 909.

Mr. Hargus's argument that the documents were exculpatory is essentially that the load ticket looked regular and Mr. Hargus relied on it in concluding the sale was legal; in addition he argues that the unsigned check he gave to the investigator would have lent credibility to his testimony.

There is ample evidence in the record, however, to support the trial judge's finding. The recorded conversation between Hargus, Johnson, and the investigator supports the view that Mr. Hargus knew the oil was stolen and the load ticket was fake. <u>See</u> Aplee. Br. Add., Gov't Exh. 36, at 5-9. On this record the trial judge's finding that the documents were at best potentially useful is not clearly erroneous.

III. Sentencing

11

Mr. Hargus challenges his sentence on six grounds: (1) the mail fraud and money laundering counts should have been grouped under USSG § 3D1.2, resulting in a lower base offense level; (2) the district court incorrectly computed the amount of loss, resulting in a higher enhancement than warranted; (3) retroactive application of USSG § 3B1.1 constituted ex post facto punishment; (4) the district court erred in finding Mr. Hargus a leader or organizer as to the money laundering counts; (5) the district court improperly considered uncharged conduct in increasing the base offense level of the money laundering counts; and (6) the court erred in finding that Mr. Hargus obstructed justice.

We review the district court's legal interpretation of the guidelines de novo, see United States v. Kunzman, 54 F.3d 1522, 1531 (10th Cir. 1995), as we do the ex post facto challenge. See United States v. Hampshire, 95 F.3d 999, 1005 (10th Cir. 1996), cert. denied, 117 S. Ct. 753 (1997). We review the sentencing court's findings of fact for clear error, giving due deference to the district court's application of the guidelines to the facts. See United States v. Farnsworth, 92 F.3d 1001, 1009 (10th Cir.) (citing United States v. Gomez-Arrellano, 5 F.3d 464, 465 (10th Cir. 1993)), cert. denied, 117 S. Ct. 596 (1996).

Mr. Hargus argues that USSG § 3D1.2 required the grouping of his mail fraud and money laundering counts. That section provides: "All counts involving substantially the same harm shall be grouped together into a single Group." USSG § 3D1.2. Mr. Hargus relies in particular on subsection (d), under which offenses covered by a list of guidelines,

12

including the guidelines for both fraud and money laundering, "are to be grouped." USSG § 3D1.2(d). While we might be inclined to agree with him were this a case of first impression, not one but two of our recent precedents have interpreted this guideline as it applies to the grouping of money laundering and fraud counts. In United States v. Johnson, 971 F.2d 562, 575-76 (10th Cir. 1992) and United States v. Kunzman, 54 F.3d 1522, 1530-31 (10th Cir. 1995) we held that because money laundering and fraud involve different harms and different victims, they may not be grouped under USSG § 3D1.2(d). It is well established in this circuit that one panel of the court may not overrule another. See In re Smith, 10 F.3d 723, 724 (10th Cir. 1993).

Mr. Hargus argues that the amount of loss should have been calculated at $419,871.29, rather than at the district court's finding of $582,918.64, resulting in a difference of one offense level. See USSG § 2F1.1. The district court's calculation, which need only be supported by a preponderance of the evidence, was based on SUN and JADCO records of Karla 2 oil bought from Hargus. Ample evidence connects these records to the stolen Borque oil Mr. Hargus brokered. See II R. 31-33, 37-38, 42-45; III R. 309-14; 323-24. The sentencing court's calculation of loss was therefore not clearly erroneous.

The sentencing court considered as "relevant conduct" activity that occurred before the November 1, 1990 amendment to USSG § 3B1.1. That amendment made clear that a sentencing court was to determine a defendant's role not only from the offense of

13

conviction but from all relevant conduct. The Ex Post Facto Clause[1] prohibits application of the amendment to conduct that occurred solely before its effective date. Mr. Hargus, however, was convicted of a conspiracy spanning January 1989 to August 28, 1991, a period of time that stretches well past the effective date of the amendment. Further, he concedes that four counts (18, 21, 22, and 23) occurred after the November 1, 1990 amendment. See Aplt. Brief at 28. Because part of the conduct for which Mr. Hargus was convicted occurred after the amendment there is no ex post facto violation. See United States v. Stanberry, 963 F.2d 1323, 1327 (10th Cir. 1992); United States v. Smith, 46 F.3d 1223, 1239 (1st Cir.), cert. denied, 116 S. Ct. 176 (1995).

Mr. Hargus argues that the sentencing court should not have found he was a leader or organizer as to the money laundering counts because he was the only participant in the laundering. The court assessed a two-level enhancement, under USSG § 3B1.1(c), based on this finding. Five counts of money laundering (Counts 19-23) involved Mr. Hargus writing checks to Ronney Dice. At Mr. Hargus's instruction, Mr. Dice picked up the checks at Mr. Hargus's home and normally cashed them. See II R. 102-03. In view of this evidence it was not clear error for the sentencing court to find that more than one person was involved in the money laundering and that Mr. Hargus was a leader or organizer.

Mr. Hargus contends that the district court improperly applied a two-level

---

[1]"No . . . ex post facto Law shall be passed." U.S. Constitution. art. I, § 9, cl. 3.

14

enhancement for money laundering under USSG § 2S1.1(b)(2)(C).  He argues that because he was charged and convicted of laundering only $34,500.00, it was error for the court to enhance his sentence under § 2S1.1(b)(2)(C), which requires at least $100,000 for any enhancement.  Mr. Hargus has failed to address § 1B1.3, under which the sentencing court may consider all relevant conduct whether or not charged.  In the record Mr. Dice identified 107 checks as his share of the illicit proceeds, see II R. 109-113, amounting to $272,098.90.  See IV R. 380-83.  The district court did not err in applying a two-level enhancement under § 2S1.1(b)(2)(C).  See Kunzman, 54 F.3d at 1531-32 (citing Johnson, 971 F.2d at 576 n.10).

Finally, Mr. Hargus claims the district court erred in assessing a two-level enhancement for obstruction of justice under USSG § 3C1.1.  The district court specifically did not adopt the Presentence Report's recommendation that the enhancement was warranted partly by a threat made to Ronney Dice.  The district court found that the enhancement was justified solely on the basis of Mr. Hargus's perjurious testimony at trial.  The court properly analyzed the elements of perjury as (1) false testimony under oath, (2) concerning a material matter, (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.  See United States v. Dunnigan, 507 U.S. 87, 94-95 (1993); United States v. Smith, 81 F.3d 915, 918 (10th Cir. 1996).  The district court identified five specific instances of perjury by Mr. Hargus at trial, finding each to be willful and material.  After reviewing the court's findings we are

15

satisfied there was no clear error.

AFFIRMED.