**UNITED STATES of America, Plaintiff,**

v.

**Terry Rees WARREN, Defendant.**

**No. 01–40074–01–SAC.**

United States District Court, D. Kansas.

Nov. 6, 2001.

---

1234

James A. Brown, Office of the United States Attorney, Topeka, KS, for Plaintiff.

David J. Phillips, Melody J. Evans, Office of Federal Public Defender, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on defendant Terry Warren's motion to suppress all information derived from the search of defendant's residence on July 14, 2001, and from the search of his storage locker on July 16, 2001 (Dk.41). Defendant has additionally filed a motion for return of property (Dk.62), without a supporting memorandum. The searches which are the subject of these motions were made pursuant to search warrants. Defendant's specific claims of error are detailed below.

## Facts

The parties do not dispute the relevant facts. On April 4, 2001, Riley County Police officers began an investigation of the defendant relating to drug trafficking activities in Riley County, Kansas and the surrounding area. During that investigation, officers believed that defendant used several locations to facilitate his distribution activities including the residence of Clarissa Hopewell at 803 Fairlane, Manhattan, Riley County, Kansas, and his truck.

On July 14, 2001, officers obtained a search warrant for Hopewell's residence in Manhattan. Before the officers served the warrant, they saw defendant leave that residence at approximately 6:35 p.m. and drive away. Knowing that defendant had a suspended driver's license, officers performed a traffic stop on the vehicle. Defendant was placed under arrest for driving with a suspended license. Search of the defendant and his vehicle revealed numerous drug-related items, including a large amount of methamphetamine, U.S. currency packaged in separate rolls of one thousand dollars, drug ledgers, and pills.

At approximately 7:15 p.m. immediately after having arrested defendant, Riley County police officers executed the search warrant on Hopewell's residence in Man-

hattan. Therein they found approximately 100 grams of methamphetamine and $924.00 in cash.

Officers then determined that they had probable cause to search defendant's residence at 502 Main Street in Beattie, Marshall County, Kansas, so contacted officers there, advising them that they needed to search defendant's residence as soon as possible. Sergeant French and Detective Fink of the Riley County Police Department then went to Marshall County, met officers there, found a judge, obtained a search warrant for defendant's residence, and served it as quickly as possible. The search warrant was applied for at about 11:00 p.m. on July 14th, was issued at 11:04 p.m., and was executed at defendant's residence at 12:03 p.m. on July 15th. Defendant's wife was awakened by the noise, told the officers that what they wanted was upstairs in the bedroom, and did not resist the search. She was unaware of which items officers removed from the home that night.

The search took approximately four and one half hours to complete. During the search, officers seized drugs, paraphernalia, and numerous other items. Among the items seized were four firearms from a locked safe in the bedroom, a rental agreement signed by defendant for a nearby storage locker, a DVD/CD player, a file box with approximately 42 pewter figurines, and a glass case with numerous pewter and other figurines in it.

Upon discovering the rental agreement, officers decided to apply for a search warrant for the storage locker, and received a warrant on July 16th. Search of the storage locker revealed no drugs or weapons, but did reveal ziplock bags, coffee filters, scales and pipes, which defendant concedes are "items arguably related to the drug trade." (Dk.45, p. 4).

## I. MOTION TO SUPPRESS

### A. Probable Cause for Residence Search

*Nexus*

Defendant first alleges that the affidavit in support of the search warrant for the residence fails to state or provide any reasonable inference that drug-related evidence would be found there. Defendant focuses upon the facts that defendant's drug dealings were not alleged to have taken place at his residence, and that it was his truck or Hopewell's residence in another county which served as defendant's place of alleged dealing, as evidenced by the fact that drug records were found in defendant's truck during the traffic search, and drugs and related items were found in the search of Hopewell's residence. Defendant further contends that the warrant's deficiency is not saved by the *Leon* good faith exception.

### General Law—Probable Cause

 Generally, a search must be made pursuant to a warrant based on probable cause. U.S. Const. amend. IV. The reviewing court gives "great deference" to the issuing judge's determination of probable cause, for it is a determination based on common sense. *United States v. Finnigin,* 113 F.3d 1182, 1185 (10th Cir. 1997). The issuing judge must make a practical, common-sense determination from the totality of the circumstances presented whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The issuing judge is expected to draw reasonable inferences from the affidavits. *See United States v. Edmonson,* 962 F.2d 1535, 1540 (10th Cir. 1992).

■ The reviewing court will uphold that determination if the supporting affidavits provide a substantial basis for finding that probable cause existed. *Gates*, 462 U.S. at 236, 103 S.Ct. 2317; *Finnigin*, 113 F.3d at 1185. "In applying the test enunciated in *Gates*, this Court has stated that the 'affidavit' should be considered in a common sense, nontechnical manner ..." *Edmonson*, 962 F.2d at 1540 (quoting *United States v. Massey*, 687 F.2d 1348, 1355 (10th Cir.1982) (citation omitted)).

■ "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232, 103 S.Ct. 2317. The Supreme Court has found it sufficient to say that probable cause is more than a mere suspicion, but considerably less than what is necessary to convict someone. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *see United States v. Wicks*, 995 F.2d 964, 972 (10th Cir.) ("The existence of probable cause is a 'common-sense standard' requiring 'facts sufficient "to warrant a man of reasonable caution in belief that an offense has been committed." ' ") (quoting *United States v. Mesa–Rincon*, 911 F.2d 1433, 1439 (10th Cir. 1990) (quoting *Brinegar v. United States*, 338 U.S. 160, 174, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)), *cert. denied*, 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993)).

■ Probable cause to search a location does not depend on direct evidence or personal knowledge that evidence or contraband is located there. *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997), *cert. denied*, 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998). The affidavit need not aver that criminal activity actually occurred in that location. *See United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 874 (10th Cir.1992).

It is enough when the affidavit establishes a "nexus between the objects to be seized and the place to be searched" from which "a person of reasonable caution" would "believe that the articles sought would be found" there. *Hargus*, 128 F.3d at 1362. This nexus "may be established through ... normal inferences as to where the articles sought would be located." *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir.1982). "[C]ourts often rely on the opinion of police officers as to where contraband may be kept." *$149,442.43 in U.S. Currency*, 965 F.2d at 874 (citations omitted).

## Good Faith Exception

In *United States v. Leon*, 468 U.S. 897, 925, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court pronounced "that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918, 104 S.Ct. 3405. "The engine that drives Fourth Amendment protection is prevention and deterrence." *United States v. McCarty*, 82 F.3d 943, 949 (10th Cir.), *cert. denied*, 519 U.S. 903, 117 S.Ct. 257, 136 L.Ed.2d 183 (1996).

■ Thus, "where the officer's conduct is objectively reasonable," that is, the officer acts with "objective good faith" in obtaining the warrant from a magistrate and in executing the warrant within its scope, "there is no police illegality and thus nothing to deter." *Leon*, 468 U.S. at 919–21, 104 S.Ct. 3405. It is the "magistrate's responsibility to determine whether the officer's allegations establish probable cause." 468 U.S. at 921, 104 S.Ct. 3405. "In the ordinary case, the officer cannot be expected to question the magistrate's probable cause determination." *Id.* Indeed, there is a " 'presumption created in

Leon that when officer relies upon a warrant, the officer is acting in good faith.'" *United States v. McKneely,* 6 F.3d 1447, 1454 (10th Cir.1993) (quoting *United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir.1985)).

■ In applying the *Leon* exception, the court understands that the:

" 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known the search was illegal despite the magistrate's authorization.' ... To answer this 'objectively ascertainable question,' we are to consider 'all of the circumstances,' and assume that the executing 'officers have a reasonable knowledge of what the law prohibits.' "

■ *United States v. Dahlman,* 13 F.3d 1391, 1397 (10th Cir.1993) (quoting *United States v. Leary,* 846 F.2d 592, 607 (10th Cir.1988) (quoting in turn *Leon,* 468 U.S. at 919, 104 S.Ct. 3405)), *cert. denied,* 511 U.S. 1045, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994). "[T]he reviewing court must examine 'the text of the warrant and the affidavit to ascertain whether the agents might have reasonably presumed it to be valid.' " *McKneely,* 6 F.3d at 1454 (quoting *United States v. Corral–Corral,* 899 F.2d 927, 932 (10th Cir.1990)).

■ The determination is not just whether the affidavits contain legally sufficient facts but whether the affidavits are devoid of factual support. *Cardall,* 773 F.2d at 1133. "Thus, 'it is only when [an officer's] reliance was wholly unwarranted that good faith is absent.' " *McKneely,* 6 F.3d at 1454 (quoting *Cardall,* 773 F.2d at 1133). " 'The government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable.' " *United States v. Cook,* 854 F.2d 371, 373 (10th Cir.1988) (quoting *United States v. Michaelian,* 803 F.2d 1042, 1048 (9th Cir.1986)), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

■ The good faith exception is not without bounds. It does not immunize an officers' reliance if the officer knew or should have known the search warrant was invalid. *McKneely,* 6 F.3d at 1455. Thus, when the magistrate in finding probable cause is misled by information in the affidavit that the affiant knows to be false or would have known to be false except for his own reckless disregard, suppression of evidence remains an appropriate remedy. *Leon,* 468 U.S. at 923, 104 S.Ct. 3405. For the same reason, an officer does not "manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quotation omitted).

**Analysis**

■ Here, the affidavit in support of the search warrant is lengthy (9 pages) and detailed. (Dk.47, Exh. A.) It contains information regarding defendant's drug-related activities and recites the officer's opinion, learned through training and experience, "that people involved in the trafficking of controlled substances will maintain controlled substances, drug paraphernalia, and records pertaining thereto at their residences ..." (Id.)

■ The mere fact that an affidavit does not contain personal knowledge of illegal activity at the residence is not fatal to the determination of probable cause. *See United States v. Williams,* 897 F.2d 1034, 1038–39 n. 2 (10th Cir.1990), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991); *Anthony v. United States,* 667 F.2d 870 (10th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982). Although the affida-

vit does not reflect the officer's knowledge that defendant dealt in drugs at his residence or kept drug-related items there, this was a reasonable inference based upon defendant's recent arrest which led to the discovery of drugs and related items on defendant and in his vehicle, and the then ongoing search of the Hopewell residence which defendant was known to frequent, which search had already revealed large sums of cash and bulk quantities of methamphetamine.

The above facts, coupled with the officer's stated knowledge "that people involved in the trafficking of controlled substances will maintain controlled substances, drug paraphernalia, and records pertaining thereto at their residences ..." provide a sufficient nexus between the objects to be seized and defendant's residence from which "a person of reasonable caution" would "believe that the articles sought would be found" there. *Hargus*, 128 F.3d at 1362. It is logical to expect that a person who deals in controlled substances may keep related items in his nearby residence. The fact that defendant also kept drug-related items in his truck and in another's residence does not make this inference any less reasonable. The court thus finds it unnecessary to reach the issue whether *Leon* applies.

## B. Magistrate as Rubber Stamp

The government further alleges that even if the warrant lacked probable cause, it would be saved by *Leon's* good faith exception. Defendant counters that *Leon* is inapplicable because the procuring officer was also the executing officer, and because the requisite nexus between the defendant and the search of his residence was obviously lacking. Therefore, according to defendant, the issuing judicial officer must have served as a mere rubber stamp for the police officers, abandoning his neutral and detached role as a judicial officer.

An issuing judicial officer who fails to " 'manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application' and who acts instead as 'an adjunct law enforcement officer' cannot provide valid authorization for an otherwise unconstitutional search." *Leon*, 468 U.S. at 914, 104 S.Ct. 3405 (quoting *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 326–27, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) (holding that the issuing judicial officer had acted as an "adjunct law enforcement officer" when he "allowed himself to become a member, if the not the leader, of the search party which was essentially a police operation.")).

The neutral and detached functions are not performed when the judge merely rubber stamps a law enforcement officer's application or ratifies the law enforcement officer's bare conclusions. *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723(1964). "[A] search premised on a warrant issued by a magistrate judge who lacks such neutrality and detachment 'stands on no firmer ground than if there had been no warrant at all.' " *United States v. Ramirez*, 63 F.3d 937, 941 (10th Cir.1995) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 453, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).

In determining whether the issuing judge was neutral and detached, the court conducts "an individualized and contextual inquiry" of the particular case focusing on the "specific circumstances surrounding the issuance of the warrant." *Ramirez*, 63 F.3d at 941.

Although defendant alleges that the magistrate merely acted as a "rubber stamp" to the affidavit for the search warrant, there is no credible evidence to support that allegation or to support a finding

that the issuing judge did not objectively evaluate the information before him. In the absence of any evidence to the contrary, and in light of the court's finding that the warrant was not lacking in probable cause, defendant's allegations are nothing more than unsubstantiated surmise.

### C. Nighttime Execution of Residential Warrant

 Defendant next contends that because the search warrant was executed at 12:03 a.m., the search of his residence was unreasonable, and therefore violated his rights under the Fourth Amendment to the Constitution of the United States. The government bears the burden to prove that the execution of the search warrant was reasonable. *United States v. Moore,* 91 F.3d 96, 97 (10th Cir.1996).

 It is undisputed that this search was state, and not federal in character. "When a search is state in character, 'the warrant and affidavits need only conform to federal constitutional requirements in order for the resulting evidence to be admissible in a federal prosecution.'" *United States v. Morehead,* 959 F.2d 1489, 1497 (10th Cir.) (quoting *United States v. Gibbons,* 607 F.2d 1320, 1325 (10th Cir.1979) (citations omitted), *aff'd on other grounds,* 971 F.2d 1461 (10th Cir.1992) (en banc)).

In *Gibbons,* the Tenth Circuit, presented with the reasonableness of a nighttime search of a car trunk pursuant to a state daytime warrant, held that the "factor of a nighttime search is sensitively related to the reasonableness issue" in the Fourth Amendment. 607 F.2d at 1326. Its determination was based on the common law aversion to nighttime searches prior to the adoption of the Fourth Amendment. *Id.*

Holding the nighttime search of a car trunk to be reasonable, the circuit explained that the: (1) "search involved no intrusion into a home"; (2) the search of a car does not present a strong case for claiming unreasonableness for a nighttime search; and (3) the facts presented the "necessity of immediate police action." *Id.* at 1327.

 Here, as in *Gibbons,* the "element of a nighttime intrusion is one element in considering the reasonableness of the search." 607 F.2d at 1326. *See United States v. Morehead,* 959 F.2d 1489, 1497–98 (10th Cir.1992) (holding that because the marijuana could have readily been moved or destroyed, and neither suspect was in custody at the time, the officers' search, even if it was conducted in the evening, was not unreasonable.) The court does not agree with defendant's assertion that *Gibbons* holds that a nighttime search is reasonable only if there is a necessity of immediate police action.[1]

 It is not constitutionally necessary for a warrant to state explicitly that a nighttime search is authorized so long as circumstances indicate that the issuing judge approved a nighttime search. *See United States v. Callwood,* 66 F.3d 1110, 1112 (10th Cir.1995) (although warrant indicated search to be conducted during daytime, nighttime search was authorized by judge, when judge was approached at 1:30 a.m., and application for warrant requested authorization for immediate search); *United States v. Carhee,* 27 F.3d 1493, 1498 (10th Cir.1994) (no clear error in district court's finding that judge authorized nighttime search of briefcase).

 The search warrant was issued at 11:04 p.m. The warrant provided that it

1. Defendant has since filed an "Errata," (Dk.68), recognizing the error in this legal standard, and conceding that the word "only" should be deleted from the above statement of law.

would be served "forthwith and within the time provided by law." (Dk.47, Exh. A). Kansas law permits the execution of a search warrant at any time of the day or night. K.S.A. § 22–2510. These circumstances show that the state judge, who signed the search warrant after 11:00 p.m., impliedly, if not expressly, authorized a nighttime search.

The facts do not appear to provide any support for a conclusion that the officers intentionally or recklessly disregarded the applicable rules in seeking the search warrant at this hour of the night, given the continuing course of events that evening. Defendant was arrested soon after 6:35 p.m. At approximately 7:15 p.m., officers executed the search warrant on Hopewell's residence, and applied for a search warrant for defendant's residence while the search of the Hopewell residence was still ongoing. The warrant to search defendant's home was executed soon after it was issued. No evidence shows that the officers intentionally delayed in either seeking the warrant or in executing it, or otherwise orchestrated the events so that their search would necessarily occur at night.

Further, it would not have been reasonable under the circumstances for the officers to have delayed their search of the residence until the daytime hours. When defendant was arrested earlier that evening, the search of his person and vehicle revealed drugs and numerous drug-related items. The officers had a reasonable basis for believing that unless they acted quickly, defendant's wife might destroy any drugs or related paraphernalia located in the residence they shared. *See United States v. Moore*, 956 F.2d 843, 850 (8th Cir.1992) (finding it reasonable for police officers to assume that suspects selling illegal drugs from a residence that has normal plumbing facilities will attempt to destroy those drugs).

Although a nighttime search is regarded as particularly intrusive, the court finds that the nighttime execution of the search warrant was not unreasonable under the circumstances present in this case.

### D. Scope of the Search of the Residence

Defendant next alleges that the officers executing the search warrant exceeded the permissible scope of the search of his residence by seizing items that were not authorized on the face of the warrant and which had no immediate incriminating nature. Although the scope of the warrant was limited to evidence pertaining to drug trafficking, officers seized guns and defendant's rental agreement for a storage locker, in addition to coin collections, miscellaneous files, a journal, figurines, and other items defendant alleges were not included in the warrant.[2]

■ "Evidence seized by state officers will be suppressed in a federal prosecution if the search violated the Fourth Amendment." *United States v. Moland*, 996 F.2d 259, 260 (10th Cir.1993) (citations omitted), *cert. denied*, 510 U.S. 1057, 114 S.Ct. 722, 126 L.Ed.2d 686 (1994). Defendant seeks to suppress whatever evidence was outside the scope of the warrant, particularly the guns and rental agreement, and to force the government to return certain items seized which were outside the scope of the warrant. The court will address these items separately, below.

### Guns

The search warrant authorized the seizure of "controlled substances, parapher-

2. For the same reason, defendant has moved the court to order the government to return 13 items seized in the search of defendant's residence. This issue will be separately addressed, below.

nalia used to distribute controlled substances, ledgers, cash, and assets obtained by sale of controlled substances." (Dk.47, Exh. A). Although many search warrants related to controlled substances expressly authorize the seizure of weapons, this one did not. The United States creatively alleges that the four guns found in a locked safe in defendant's bedroom are "paraphernalia used to distribute controlled substances," within the meaning of that term in the search warrant.

Although the court recognizes that guns are commonly associated with drug trafficking, and have been recognized as a tool of that trade, *see $149,442.43 in United States Currency*, 965 F.2d at 876; *United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir.1991), it stretches the plain meaning of the term "paraphernalia" to find that guns are included therein. Guns are typically itemized or noted separately from drug paraphernalia in decisional law. *See e.g., United States v. Maldonado*, 216 F.3d 1089, 2000 WL 825717 at *5 (10th Cir. June 26, 2000) (Table) (noting that an individual was surrounded by the "guns and drug paraphernalia,"), *cert. denied*, 531 U.S. 973, 121 S.Ct. 415, 148 L.Ed.2d 320 (2000); *United States v. Ashcraft*, 117 F.3d 1429, 1997 WL 400048, *2 (10th Cir. July 16, 1997) (noting officers found "drugs, paraphernalia, money, and guns.").

Similarly, testimony from Sergeant Mark French in this case was that when he used the term "paraphernalia" in his report about the search of the truck, that term did not include weapons, and when he used that same term in preparing the search warrant in this case for the magistrate to sign, he did not intend for paraphernalia to include weapons.

■ The court thus disagrees that guns are included within the meaning of the term "paraphernalia" in the search warrant. Although the search warrant also authorizes seizure of "assets obtained by sale of controlled substances," and guns could theoretically be such assets, there is no testimony that these guns were seized because the officers believed them to be assets so obtained, or that the guns had actually been obtained by the sale of controlled substances. Accordingly, the court finds no authorization for the seizure of the guns on the face of the warrant.

### Plain View Exception

■ The United States next alleges that the seizure of the guns was justified because the guns were in plain view. The Supreme Court recognizes the plain view doctrine as a valid exception to the "general rule that warrantless searches are presumptively unreasonable." *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The rule permits an officer to seize contraband without a warrant when:

> (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent— *i.e.*, the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.

*United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir.1999) (quoting *United States v. Soussi*, 29 F.3d 565, 570 (10th Cir.1994)).

■ Defendant challenges only the incriminating nature of the guns, and does not challenge the other elements of the plain view doctrine. The United States counters that officers knew that the guns were incriminating because it is illegal for a user of controlled substances, such as the defendant, to be in possession of a firearm, citing 18 U.S.C. § 922(g)(3). *See United*

*States v. Le,* 173 F.3d 1258, 1270–71 (10th Cir.1999) (upholding seizure of guns found during execution of warrant for drugs where guns were in plain view and officers testified they were aware it was a federal offense for a drug user to possess a firearm.)

Sergeant French testified that he opened the safe in which the guns were found because he was looking for controlled substances, as authorized by the face of the warrant. He had a key to the safe because it had been taken off the defendant earlier that evening during his arrest. Sergeant French testified that he seized the guns upon seeing them because their illegal nature was immediately apparent to him. He stated that he knew immediately that defendant's possession of guns violated state law,[3] and that he always seizes guns he sees during the execution of narcotics search warrants.

Based upon the testimony regarding the officer's understanding of state law, the incriminating character of the guns was immediately apparent to him, and this element of the plain view exception is met as to the guns found in the safe.

**Rental Agreement**

 Defendant similarly alleges that the rental agreement for the storage locker has no immediately apparent incriminating character. This document was found in a file cabinet which the officers lawfully accessed in defendant's bedroom while looking for ledgers, which are specifically authorized on the face of the search warrant. Officers testified that they knew it was common for drug dealers to store drugs or related items in storage lockers, that there is "strong indication" that such units are used for the purpose of storing controlled substances, that officers typically attempt to locate storage units in investigating drug distribution cases, and that drugs or related items had been found in such units in other recent cases.

Under these circumstances, the court finds that the seizure of the guns and the rental agreement for the storage locker was proper pursuant to the plain view doctrine. No suppression of these items is warranted.

**Other Items—Asset Forfeiture**

At the evidentiary hearing held October 3, 2001, officers testified that they seized certain items not pursuant to the criminal search warrant, but pursuant to a civil asset forfeiture statute under Kansas law, which they believe enables them to seize anything of value up to the value of an exempt residence otherwise subject to forfeiture. *See* Kan. Stat. Ann. § 60–4107(b) (stating "property may be seized for forfeiture by a law enforcement officer without process on probable cause to believe the property is subject to forfeiture under this act."); § 60–4104(b) (including "violations of the uniform controlled substances act" as conduct giving rise to forfeiture); § 60–4105 (including as property subject to forfeiture all property that is "used or intended to be used in any manner to facilitate conduct giving rise to forfeiture," or property derived from or acquired with proceeds of conduct giving rise to forfeiture); § 60–4115 (listing circumstances under which a court shall order the forfeiture of substituted property up to the value of the defendant's exempt property).

 Defendant does not challenge either the validity of the state's civil asset forfeiture law or the officers' interpretation thereof. Instead, defendant generally

---

**3.** Under Kansas law, criminal possession of a firearm includes "possession of any firearm by a person who is both addicted to and an unlawful user of a controlled substance." Kan. Stat. Ann. § 21–4204(a)(1).

argues that the government's search of his house was so broad and indiscriminate that it constituted a "general search" and that all the evidence that law enforcement officials seized should therefore be suppressed, including evidence within the warrant's scope. Defendant correctly notes that the Fourth Amendment was adopted in part to ward off the menace of "general searches." *See Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987).

The court disagrees with defendant's contention that a blanket suppression is warranted. First, the warrant itself, as discussed above, was lawful. It was obtained through lawful procedures. *See Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The showing of "probable cause" was ample. See *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. It described the objects to be seized with sufficient precision.

Second, even if some items outside the warrant's scope were seized, unlawful seizure of items outside a warrant does not alone render the whole search invalid and require suppression and return of all documents seized, including those lawfully taken pursuant to the warrant. *Le,* 173 F.3d at 1269–70. The general rule is that only the improperly seized evidence must be suppressed. As set forth in *Le,* 173 F.3d at 1269–70:

"[T]he general rule," where executing officers exceed the scope of a warrant, "is that 'only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant.'" [*United States v. Hargus,* 128 F.3d 1358, 1361 (10th Cir.1997), *cert. denied,* 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998)] (quoting *United States v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 875 (10th Cir.1992)). In

the vast majority of cases, "a search is not invalidated merely because some things are seized that are not stated in the warrant." *Id.* "This is particularly true when the non-specified items are not admitted into evidence against the defendant." . . .

"Keeping in mind that the rule that blanket suppression is an extreme remedy, almost wholly absent from the Fourth Amendment jurisprudence of other circuits, we must determine whether the officers executing the state warrant so flagrantly exceeded its scope that blanket suppression is a justifiable remedy."

Third, this is not one of those unusual cases where suppression of all the evidence seems required because the lawful and unlawful parts of the search were inextricably intertwined, or where the lawful part seems to have been a kind of pretext for the unlawful part. *See United States v. Medlin,* 842 F.2d 1194, 1198–99 (10th Cir. 1988) (officers' "flagrant disregard" for terms of warrant renders entire search illegal).

The information recited in the search warrant affidavit, combined with the discovery of drugs, records, and large amounts of currency at defendant's residence, gave rise to probable cause that the seized items were subject to forfeiture proceedings under Kan. Stat. Ann. § 60–4105, and thus were properly seized under § 60–4107. The officers reasonably believed at the time of the search that various items not listed on the face of the warrant could be seized under § 60–4107(b) because probable cause existed to support the conclusion that the items were subject to forfeiture under the act due to defendant's dealings in controlled substances. It has not been shown that the officers acted any differently in this case than they do in executing any other search warrant involving controlled substances. Defendant has

shown no reason to depart from the general rule.

In this situation, the court will not order blanket suppression. The items were seized pursuant to legal authority under state law which defendant does not challenge. The court does not find a flagrant disregard for the scope of the warrant that might justify blanket suppression. Further, because the officers executing the warrant acted in an objectively reasonable manner and in good faith in executing the warrant and in the seizure of items not named in the warrant,[4] the court will not order suppression of such items.

### E. Search of Storage Locker

 Defendant alleges that the search of the storage locker is unconstitutional because no nexus was shown between it and the probability that drug-related evidence would be found therein. Defendant relies upon the same arguments made regarding the lack of nexus for the search of defendant's residence.

The court relies upon the same authorities and analysis as used above in determining that an adequate nexus was shown to defendant's residence. The magistrate was presented with an affidavit in support of the search warrant for the storage locker which incorporated Deputy Kenworthy's statement that a large amount of methamphetamine was found on July 15, 2001 when defendant was arrested and his residence searched, that the rental agreement was found in the file cabinet in defendant's bedroom, that she possessed

certain information from confidential informants regarding the manufacture of methamphetamines, and that she believed that a methamphetamine lab could be located in the defendant's storage facility. (Dk.45, App. C). The documents in support of the search warrant provided the magistrate with ample reason to believe that defendant may be harboring drug-related evidence in a storage locker, which has an even greater degree of secrecy than does a residence. His decision to issue the warrant shall be upheld.

### II. Motion for Return of Property

Citing Fed.R.Crim.P. 41(e), defendant has moved for the return of certain listed items seized by officers from defendant's home, which defendant alleges are outside the scope of the warrant. That rule provides that "a person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court . . . for the return of the property . . ." The rule further provides that if such a motion is made after an indictment is filed, it shall be treated as a motion to suppress under Rule 12. The government does not challenge the propriety of defendant's motion[5], but alleges that the evidence in dispute was seized both under the warrant and for purposes of civil asset forfeiture.

Although defendant did not file its motion for return of property until after the conclusion of the evidentiary hearing, neither the defendant nor the government has requested an additional evidentiary

---

4. Defendant's counsel casts aspersions upon opposing counsel's curious delay in raising the asset forfeiture rationale, but the court finds therein no basis for a finding of flagrant disregard on the part of the officers involved in the execution of the search warrant and in the inventory of the assets, given their credible and unrebutted testimony.

5. Some authority exists that a Rule 41(e) motion is unavailable when property is retained pursuant to civil forfeiture instead of for use as evidence. *See United States v. Watkins*, 120 F.3d 254, 255 (11th Cir.1997), *cert. denied*, 523 U.S. 1067, 118 S.Ct. 1407, 140 L.Ed.2d 662 (1998).

hearing on this issue, and the court believes that the evidence admitted during the suppression hearing provides the facts necessary to its decision of this motion as well.

In response to defendant's motion, the government has agreed to return the following items: 14 (black file folder with papers); 15 (three 3-ring binders with savings account statements); 38 (miscellaneous bank papers); 45 (brown leather wallet, without cash); 51(green file box with 42 pewter figurines); 52 (glass case with numerous glass, pewter and other figurines); 53 (miscellaneous ledgers with metal change box); and 56 (DVD/CD player). The government refuses to return the other disputed items, which it alleges were lawfully seized and have evidentiary value. These disputed items are: 19 (miscellaneous files, including rental agreement, from file cabinet); 40 (electronic ledger); 41(notebook ledger); 58 (miscellaneous papers from the desktop); and 65(recipe box in which controlled substances were found).

 As the court ruled above, no Fourth Amendment violation has been shown. The court additionally finds that the government has adequately justified its retention of the items it refuses to return. Specifically, it has shown that items 40 and 41 are ledgers, authorized on the face of the warrant, (see Dk. 45, App. A), and that items numbered 65 and 19 contained controlled substances and the rental agreement, respectively, and are thus evidence. (65 is the recipe box in which controlled substances were found; 19 consists of miscellaneous files which included the rental agreement). Although the miscellaneous papers taken from defendant's desktop (item 58) do not contain ledgers, they do contain some items of evidentiary value, allegedly establishing defendant's nexus to the residence.

The motion to return property shall therefore be denied to the extent it seeks return of items corresponding to the following numbers on the evidence custody receipt: 19, 40, 41, 58 and 65. However, the government shall return to the defendant forthwith, if it has not already done so, the items which it has agreed to return, *i.e.*, items corresponding to the following numbers on the evidence custody receipt: 14, 15, 38, 45, 51, 52, 53, and 56.

IT IS THEREFORE ORDERED that defendants' motion to suppress (Dk.41) is denied.

IT IS FURTHER ORDERED that defendant's motion for return of property (Dk.62) is granted in part, and denied in part, in accordance with the terms of this memorandum.