**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 10 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | No. 03-6247 |
| v. | Western District of Oklahoma |
| WALTER JACK CHILDERS, | (D.C. No. CR-02-110-M) |
| Defendant-Appellant. | |

**ORDER AND JUDGMENT** *

Before **HARTZ** , Circuit Judge, **McWILLIAMS** , Senior Circuit Judge, and **McCONNELL** , Circuit Judge.

Walter Jack Childers entered a conditional guilty plea to possession of a videotape produced by using a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). He now appeals the denial of his motion to suppress evidence obtained as a result of two search warrants, arguing that 1) federal agents unlawfully exceeded the scope of the first search warrant, 2) the second search warrant was invalid because it was based on the fruits of an

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

unlawful search, and 3) the district court abused its discretion when it denied Mr.

Childers's request for an evidentiary hearing on his motion to suppress. We

**AFFIRM** the district court on all three issues.

I.

On May 24, 2002, the United States District Court for the Western District

of Oklahoma issued a search warrant ("first search warrant") for Mr. Childers's

house located at 3512 North Pennsylvania, Oklahoma City, Oklahoma. Mr.

Childers was the subject of a federal investigation into whether he was

fraudulently receiving Supplemental Security Income ("SSI") disability benefits.

The investigation showed that although he was receiving SSI disability benefits,

he was also receiving thousands of dollars per month from a number of

undisclosed businesses which he ran from his residence.

The search warrant, which authorized a search for evidence of fraud, social

security fraud, and other property offenses in violation of 42 U.S.C. §

1383a(a)(2)-(3) and 18 U.S.C. §§ 641, 1001, and 1341, described the property to

be seized, in pertinent part, as follows:

> All records relating to any source of monies, income, assets,
> properties and liabilities of Walter Jack Childers (AKA Jack
> Childers) and relating to any service provided by Childers or
> businesses under the control of Childers, which may provide Childers
> a source of money, income, assets or properties....These records,
> documents, and/or other materials, in any form (written, printed,
> magnetic, or electronic) sought herein should include:
> ...

b) Books, records, spreadsheets, receipts, money drafts, letters of credit, money orders, check receipts, wire transfer records, passbooks, bank checks, audiotapes, *videotapes* , and other tangible items *evidencing the obtaining, transfer, and/or concealment of assets and/or money transactions and the obtaining, transfer, concealment, deposit and/or expenditure of money* ;

c) Records of stocks, bonds, real estate holdings, insurance policies, investments, investment portfolios, equipment holdings, and asset acquisitions, *including tapes* and photographs *of any assets* ;...

Attachment B to first search warrant (emphasis added).

During the execution of the first search warrant on May 29, 2002, federal agents discovered the videotape that is the subject of Mr. Childers's suppression motion. Postal Inspector Charlie Thigpen entered Mr. Childers's bedroom to examine some videotapes that were on a bookcase. Some of the videotapes had sexually suggestive titles. Inspector Thigpen brought a stack of the videotapes to a TV-VCR combination that was sitting on a night stand. He then pushed power and play on the TV-VCR, and a videotape that was already in the machine began to play. The videotape depicted what appeared to be an adult male and a twelve to fourteen year old boy engaged in sex. Inspector Thigpen briefly fast-forwarded to another part of the videotape, which allowed him to identify the adult male as Mr. Childers. He then stopped the videotape, contacted Agent Pannell of the United States Attorney's Office, and sought a second search warrant.

On May 30, 2002, United States Magistrate Judge Doyle Argo approved a second search warrant for the videotape that was found in the TV-VCR, as well as

71 other videotapes found during the search of Mr. Childers's bedroom. After obtaining the second search warrant, Inspector Thigpen examined additional scenes on the videotape initially found in the TV-VCR.

A federal grand jury indicted Mr. Childers on three counts of using a child under the age of eighteen to engage in sexually explicit conduct for purposes of producing a visual depiction of such conduct using materials that had been transported in interstate commerce, in violation of 18 U.S.C. § 2251(a). A fourth count charged Mr. Childers with possessing a videotape produced by using a minor engaged in sexually explicit conduct and containing visual depictions of that conduct with materials that had been transported in interstate commerce, in violation of 18 U.S.C. § 2252(a)(4)(B).

Mr. Childers filed a motion to suppress the evidence obtained as a result of the two search warrants, and the district court denied the motion without an evidentiary hearing. Mr. Childers then entered a conditional guilty plea to the indictment, reserving his right to appeal the denial of the motion to suppress.

Mr. Childers also filed, and the district court granted, a motion to dismiss counts one through three because of Ex Post Facto Clause concerns. Later in the proceedings, the court also combined count four of the child pornography case with the case involving Mr. Childers's social security fraud (CR-02-165-M).

On count four, the court sentenced Mr. Childers to the statutory maximum of five years' imprisonment, three years' supervised release, and a $100.00 special assessment. In the social security fraud case, the court sentenced Mr. Childers to five years' imprisonment to run consecutively to the sentence in the child pornography case, and three years' supervised release to run concurrently with the supervised release term in the child pornography case.

II.

On appeal, Mr. Childers contends that the search yielding the videotape was unlawful because it exceeded the scope of the first search warrant and because Inspector Thigpen was actually searching for pornography.

When reviewing a district court's denial of a motion to suppress, we defer to the district court's findings of fact unless they are clearly erroneous, and we consider the evidence in the light most favorable to the district court's ruling. *United States v. Zabalza*, 346 F.3d 1255, 1257-58 (10th Cir. 2003). However, we review *de novo* the ultimate determination of reasonableness under the Fourth Amendment. *Id.* at 1258.

An agent's conduct in executing a search warrant is governed by the Fourth Amendment's mandate of reasonableness. *United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir. 1997). In its application of this standard, this Court has acknowledged that "in some instances, searching officers must be able to examine

nearly every document possessed by a suspected criminal, if only to determine whether the documents contain evidence of criminal activity." *United States v. Le*, 173 F.3d 1258, 1276 (10th Cir. 1999). "[A]llowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transaction in a folder marked 'drug records.'" *Id.* (internal quotations and citations omitted).

Under this standard, the district court correctly concluded that Inspector Thigpen did not exceed the scope of the first search warrant when he briefly viewed the videotape found in the TV-VCR. The first search warrant explicitly authorized the seizure of "videotapes...evidencing the obtaining, transfer, and/or concealment of assets and/or money transactions and the obtaining, transfer, concealment, deposit and/or expenditure of money," as well as "tapes...of any assets." Thus, as the district court noted, "[i]n executing the First Search Warrant, Inspector Thigpen was authorized to cursorily review a videotape to determine if it was of the type covered by the First Search Warrant, just as he was authorized to cursorily review documents to determine if they were of the type covered by the First Search Warrant." Op. 7. Pursuant to this authorization, Inspector Thigpen viewed a brief portion of the videotape and, after determining its contents, promptly stopped his search and contacted the United States Attorney's Office to seek a second search warrant. On these facts, the district

court correctly concluded that Inspector Thigpen acted reasonably within the scope of the first search warrant.

Mr. Childers also contends that the search was unlawful because Inspector Thigpen was actually searching for pornography and did not believe the videotape contained evidence of social security fraud. This argument is inapposite. The Supreme Court has made clear that the Fourth Amendment reasonableness standard is an objective one and that the subjective state of mind of the officer is irrelevant. *Horton v. California*, 496 U.S. 128, 138 (1990); *Whren v. United States*, 517 U.S. 806, 813 (1996). Thus, even the fact that "an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement." *Horton*, 496 U.S. at 138.

The question, then, is not whether Inspector Thigpen actually thought the videotape contained evidence of social security fraud, but whether his search and seizure was confined in area and duration by the objective terms of the first search warrant. That is, could an objectively reasonable officer conclude that the videotape might contain evidence of social security fraud?

Inspector Thigpen's search satisfies this objective standard. Even if the sexually suggestive titles would put a reasonable officer on notice that the

videotapes contained sexual material, [1] it is reasonable to conclude, as did the district court, that "even homemade videotapes containing sexual material reasonably could also contain evidence of the existence of assets and properties that [Mr. Childers] had failed to disclose, providing evidence of [Mr. Childers's] alleged social security fraud, and/or evidence of [Mr. Childers's] involvement in a pornographic video production business that generated income." Op. 7. Thus, the cursory review of the videotape falls squarely within the scope of the first search warrant. [2]

## III.

Mr. Childers also argues that all evidence obtained as a result of the second search warrant must be suppressed as the "fruit of the poisonous tree," *Wong Sun v. United States*, 371 U.S. 471 (1963), because the second search warrant was the product of the initial unlawful search. Because we find that the initial search was lawful, Mr. Childers's fruit of the poisonous tree argument also must fail.

## IV.

---

[1] The district court noted, however, that "[t]he evidence seems to indicate...that Inspector Thigpen was not aware of the title [of the videotape] at the time he pushed play on the VCR." Op. 8 n. 3

[2] Because we find that the initial search and seizure of the videotape falls within the scope of the first search warrant, we need not address the argument, briefed by both parties but not relied upon by the district court, that the viewing of the videotape is also justified by the "plain view" doctrine. *See, e.g.*, *Horton*, 496 U.S. at 133-34.

In his Summary of Argument, Mr. Childers mentions, without citing authority, that "[t]he district court erred by denying the requested evidentiary hearing on the motion to suppress." Appellant's Brief at 10. Presumably, Mr. Childers's argument is that the denial of an evidentiary hearing was improper because he raised contested issues of material fact by "recount[ing] four different versions of how the video tape was discovered in [his] motion to suppress." *Id.* at 5.

We review a trial court's denial of an evidentiary hearing on a motion to suppress for abuse of discretion. *United States v. Glass*, 128 F.3d 1398, 1408 (10th Cir. 1997). "The defendant bears the burden of showing there are material facts in dispute, and an evidentiary hearing is only required when the motion to suppress raise[s] factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *Id.* at 1408-09 (internal quotations and citations omitted).

Our review of the record reveals no abuse of discretion. Mr. Childers's motion to suppress did present different versions of how the videotape was discovered. In particular, he refers to a conversation between Inspector Thigpen and a staff member of the magistrate judge, a conversation in which Inspector Thigpen allegedly stated that "he went into the bedroom, saw the tapes, picked

one out, popped it in the VCR and pushed play." Appellant's Brief at 6. This version of the facts, however, does not raise a "contested issue[] of fact going to the validity of the search" because even under this version of the facts the search of the videotape was proper. As noted above, the search was proper even if the titles of the videotape put Inspector Thigpen on notice that the videotapes contained sexual material. *See supra* 7-8. Thus, because no material facts were in dispute, the district court did not abuse its discretion in denying an evidentiary hearing.

V.

For the foregoing reasons, we **AFFIRM** the district court's denial of the motion to suppress.

Entered for the Court,

Michael W. McConnell
Circuit Judge